[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
The defendant Robert Miller has been charged by the State of Connecticut with sale of certain illegal drugs in violation of § 21-278 (b) of the Connecticut General Statutes. The defendant has filed a motion to dismiss pursuant to the Fifth,Sixth and Fourteenth Amendments of the U.S. Constitution, Article1, Section 8 of the Connecticut Constitution; Connecticut General Statutes § 54-56 and Practice Book §§ 815(5) and 815(9). The defendant's basis for the motion to dismiss is the State's failure or inability to produce the confidential informant who set up the purported narcotics deal which ultimately led to the defendant's arrest. The state and defendant offered no live testimony or evidence and both relied solely on oral argument and a written memorandum of law submitted by the defendant. Both the State and defendant agree that on October 30, 1996, the defendant was the operator of a motor vehicle in which Kenneth Grace was a CT Page 6138 passenger and which vehicle proceeded to the Derby Train Station. The defendant further alleges that unbeknownst to Miller, members of the Valley Street Crime Unit were conducting a surveillance at the train station because they had, utilizing the service of a confidential informant, arranged for Kenneth Grace, the co-defendant to deliver a quarter pound of cocaine to said station. At the train station, the police searched their vehicle and located cocaine and other contraband. It is the defense's contention that the confidential informant's testimony will be material to his guilt or innocence and that his information is the only source linking the defendant to this narcotic activity. However, the defendant concedes that the State did disclose the identity of the informant but that his location is unknown. On December 19, 1996, the defendant filed a Request for Discovery and Production and pursuant to that motion the defendant claims he requested the identity and address of any informant. A review of that motion indicates such information was requested. (paragraph 28) Subsequently, on October 7, 1997, the defendant filed a Motion to Compel, requesting the state's attorney to disclose the informant's address and any other information which will enable the defendant to locate the informant for purposes of interviewing him by defense counsel. On December 19, 1996, the defendant filed a Motion to Suppress all items seized from the defendant Robert Miller and/or the motor vehicle driven by him on October 30, 1996. A hearing on this motion was heard by the Honorable George W. Ripley on December 30, 1997, consisting of testimony of Detective Robert Donahue, Detective Richard DeRiso and Detective Chris Rubin of the Fairfield Police Department. Reviewing the transcript of the testimony given at this hearing on the motion to suppress reflects that Detective Donahue upon cross examination by Attorney Thomas revealed the name of the informant "Mickey" whose real name is John Shaw (p. 14). Further, Detective Donahue stated that the informant (Shaw a.k.a. Mickey) was a participant in these transactions? In other words, he set up the drug sales? Answer: That's correct, under my direction. (P. 15) Furthermore, Detective Donahue's testimony revealed that the informant was not present at the Derby Train Station when the defendant's vehicle was stopped and searched. The informant was at his house. (p. 22). Further, Detective Donahue's testimony revealed the informant's house to be located on Minerva Street in Derby. (P. 24). After the completion of this hearing the Honorable George W. Ripley in his decision dated March 9, 1998, stated:
 "In reviewing the facts leading up to the defendant's arrests and search of his CT Page 6139 vehicle, for an assessment to determine whether probable cause existed it is clear that there was considerably more than a "hunch" on the part of the arresting officers that a crime might be in progress. All of the events as set up by the informant unraveled as predicted and for the purposes intended, i.e., that of ostensibly enabling a narcotics purchase for the purpose of apprehending the defendant. (Corrected by Judge Ripley to read "those involved in the transaction") dated March 27, 1998." All of these events justified the arrest of the defendant and the search of the vehicle which turned up contraband in the back seat and elsewhere in the vehicle together with other items customarily found among the possessions of suspected drug dealers. The search of a motor vehicle incident to lawful stop without a warrant is justified. Once it is determined that the temporary detention of the defendant was reasonable. . . . The motion to suppress/dismiss is denied."
It should be pointed our that although the defendant's counsel filed the Request for Discovery seeking any informant's name and address on December 19, 1996, said counsel chose for whatever reason not to file a motion to compel this disclosure for nearly ten (10) months. As previously indicated in this memorandum, the name and address of the informant was thereafter disclosed on December 30, 1997. Also, it is this Court's understanding that the State's Attorney's Office in Derby, where the case originated, and later in the State's Attorney's Office in Milford after a transfer, both have an open file policy. Whether this open file policy as understood by the Court is correct, in fact no motion to compel was filed for nearly ten (10) months.
The defendant's brief recites Rovario v. United States,353 U.S. 53, 77 S.Ct. 623 (1957), a case in which the government relied on the testimony of two federal narcotics agents, Durham and Fields, and two Chicago police officers, Bryson and Sims, each of whom knew petitioner by sight. On the night of August 12, 1954, these four (4) officers met on 75th Street and Prairie Avenue in Chicago with an informer described only as John Doe. CT Page 6140 Doe and his Cadillac were searched and no narcotics were found. Bryson secreted himself in the trunk of Doe's Cadillac, taking a device to raise the trunk lid from inside. Doe drove to 70th Place and St. Lawrence Avenue followed by Durham and Field and Sims in separate vehicles. An hour later, at 11 p. m., petitioner arrived in a Pontiac with an unidentified man. Petitioner entered Doe's Cadillac in the front seat. They proceeded to 74th Street near Champlain where the vehicle stopped. Durham alighted, as did petitioner, and the latter picked up a small package, made a motion as if depositing the package in the car and walked away. Durham returned to the Cadillac and recovered a package from the floor. He signaled Bryson to come our of the trunk, walked down the street in time to see petitioner enter the Pontiac and drive away. While Bryson was concealed in the trunk of the Cadillac, he heard the conversation between John Doe and petitioner after the latter entered the car. Petitioner asked about money Doe owed him. He advised Doe that he had brought "three pieces this time." When Bryson heard Doe being ordered to stop the car, he raised the lid of the trunk slightly. When the car stopped, he saw petitioner walk to a tree, pick up a package, and return toward the car. He heard petitioner say "Here it is." Shortly thereafter, he heard Durham signal to come out and he emerged from the trunk to find Durham holding a small package containing 3 glassine envelopes containing a white powder. A field test indicated it contain an opium derivative. Petitioner was later arrested at his home and taken along with Doe to police headquarters. There petitioner was confronted with Doe, who denied that he knew or had ever seen petitioner. Petitioner claimed the trial court erred in upholding the right of the Government to withhold the identity of John Doe. In reversing the Court of Appeals which had affirmed the trial court, the Supreme Court stated (at page 62): "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors. Further, that court stated:
 "So far as petitioner knew, he and John Doe were alone and unobserved during the crucial occurrence for which he was indicted. . . . John Doe was his one material witness. . . . He might have thrown doubt upon petitioner's CT Page 6141 identity or on the identity of the package. Ibid, p. 64. Finally, this is a case where the Government's informer was the sole
(underline supplied) participant, other than the accused, in the transaction charged." Ibid, p. 64.
The Rovario case can be clearly distinguished from the instant case. In this case (Miller), the informer was not present at the time of the crime charged. Furthermore, at some point, his name and address were disclosed to defense. In Rovario, the Supreme Court held failure of the Court to require disclosure was reversible error.
This court does not know of any sound rule of law requiring the State to monitor the informer's whereabouts once the informant is disclosed. Whereas, State v. Lee, 30 Conn. App. 470,481 held: We hold that the non-disclosure of Buckley's whereabouts deprived the defendant of her right to present a defense. On retrial, therefore, the State must reveal this information. However, in the Lee case, the defense raised the issue of entrapment. In Miller, the defense has not suggested that its defense is based on entrapment. Finally, as Rovario
stated: ". . . The trial court committed prejudicial error in permitting the government to withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure." Ibid, p. 65. The state in Miller, has carried out the dictates of the requirements set forth in Rovario. The defense also points to the case of State v. Jackson,239 Conn. 629, (1997), a case in which the defendant Otis Jackson, was charged with the sale of cocaine in violation of General Statutes § 21a-278 (b). After learning that an informant had been instrumental in his arrest, the defendant moved for disclosure of the informant's identity. The trial court, . . . granted the defendant's motion, concluding that disclosure was mandated by the defendant's claim of mistaken identity. After the state refused to disclose the informant's identity, the trial court granted the defendant's motion to dismiss. The Appellate Court reversed the trial court's judgment of dismissal and remanded the case for a hearing consistent withRovario, the court again ordered disclosure. The state refused to disclose the informer's identity. The court granted the defendant's motion to dismiss. On appeal, our Supreme Court reversed this decision. The facts in the Jackson case can be distinguished from the instant case. In Jackson, the undercover CT Page 6142 officer and the informant entered Mac's Cafe in Middletown where the informant introduced the officer to Jackson. After a brief discussion, the defendant led the undercover officer to the lavatory and the defendant sold him a packet of cocaine for $20.00. Subsequently, the defendant was arrested after viewing by the officer of a photograph of the defendant as the man who sold him cocaine. In Jackson, the court stated: The privilege to maintain the secrecy of the informant's identity is part of a complex privilege relating to the needs of the government. Four general principles should be considered in applying the privilege: "(1) The communications must originate in a confidence that they will not be disclosed . . . (2) [t]his element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties. (3) [t]he relation must be one which in the opinion of the community ought to be sedulously fostered [and] (4) [t]he injury that would inure to the relation by the disclosure . . . must be greater than the benefit thereby gained [by disclosure] . . . All four are clearly present in the case of the informant-government relationship. Ibid, p. 633.
Inasmuch as the state in Miller has supplied both the name and address of the informant, it has complied with the tenor of the Rovario and Jackson cases. Nowhere has defense substantiated its position that the State must keep the informant under wraps, monitoring his whereabouts or requiring his presence at trial after full disclosure of the informant's name and address.
Accordingly, the defendant's motion to dismiss is denied.
GROGINS, J.